UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ARMEN G.[1],

                Plaintiff,

v.

COMMISSIONER,
Social Security Administration,

                Defendant.

Case No. 06:21-cv-00112-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

      Armen G. ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Supplemental Security Income ("SSI") benefits under Title II of the Social Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed, and this case is dismissed.

---

[1] In the interest of privacy, the Court uses only plaintiff's first name and the initial of the last name.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI benefits on January 10, 2018, alleging disability due to a heart condition, left-side numbness and pain, memory loss, back injury, and depression. Tr. 236, 253-59. His application was denied initially, and on reconsideration. Tr. 123, 130. At plaintiff's request, a hearing was held before an administrative law judge (ALJ) on January 3, 2020. Plaintiff, represented by counsel, testified, as did a vocational expert (VE). Tr. 42-73. On June 30, 2020, a second hearing was held before the same ALJ. Plaintiff appeared by telephone, along with counsel and a different VE. Tr. 74-96. The ALJ issued an unfavorable decision on July 24, 2020. On November 19, 2020, the Appeals Council denied the plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 5-7. This timely appeal followed.

## THE ALJ'S FINDINGS

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since January 10, 2018, the date of application. Tr. 19. At step two, the ALJ determined that plaintiff had the following severe impairments:

> cervical spine degenerative disc disease, status post ORIF of right posterior transverse acetabular fracture, status post left superior and inferior pubic ramus fractures, status post right medial malleolus fracture, major depressive disorder, unspecified anxiety disorder, unspecified neurocognitive disorder, and cannabis use disorder.

*Id*. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment. Tr. 19-20.

Next, the ALJ found that for the period from the alleged onset date, July 15, 2017, to August 31, 2019, plaintiff had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 416.967(c). However, for the period beginning

Page 2 – OPINION AND ORDER

September 1, 2019 to the date of the opinion, plaintiff could perform light work as defined in 20 C.F.R. § 416.967(b), except that plaintiff:

> could lift/carry twenty pounds occasionally, and ten pounds frequently; [he] could sit eight hours, stand four hours, and walk four hours in an eight-hour workday with normal breaks; [plaintiff] would require use of a cane as needed for ambulation; [he] would be limited to occasional climbing of ramps and stairs, but no climbing of ladders, ropes, or scaffolds; [plaintiff] would be limited to occasional balancing, kneeling, crouching, and crawling; [he] would be limited to understanding and carrying out simple instructions consistent with reasoning level one or two; plaintiff would be limited to occasional contact with the general public, coworkers, and supervisors; and [he] would be limited to a work environment with few changes.

Tr. 21.

At step four, the ALJ determined that from July 15, 2017 to August 31, 2019, plaintiff could perform past relevant work as a caregiver/home attendant. Tr. 33. For the period after September 1, 2019, the ALJ found that despite his limitations, plaintiff could still perform other jobs that exist in significant numbers in the national economy. Tr. 36.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, a court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## DISCUSSION

Plaintiff argues the ALJ erred by improperly rejecting medical opinion evidence. The Commissioner asserts that the ALJ's interpretation of the medical opinion evidence was reasonable.

A.   **Evaluating Medical Opinion Evidence**

Federal Regulation 20 C.F.R. 416.920c governs how an ALJ must evaluate medical opinion evidence for claims, such as this one, filed on or after March 27, 2017. These regulations provide the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources." 20 C.F.R. § 416.920c(a). The ALJ must consider all medical opinions and "evaluate the persuasiveness" of such opinions using the factors specified in the regulations. 20 C.F.R. § 404.1520c(b). While the most important factors are supportability and consistency, the ALJ must also consider the medical source's treatment relationship with the claimant, including the length, frequency, and purpose of the relationship, and whether the medical source is a specialist. 20 C.F.R. § 416.920c(a) and (c).

The regulations require ALJs to "articulate ... how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 416.920c(b). The ALJ is not required to explain how he or she considered the secondary factors unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. 20 C.F.R. § 416.920c(b)(3). The court must, however, continue to consider whether the ALJ's analysis is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).

Page 4 – OPINION AND ORDER

B.   Dr. Leinenbach's Opinion

In February 2020, plaintiff underwent a medical consultative exam performed by Derek Leinenbach, M.D. Tr. 466-75. The exam consisted of a review of plaintiff's medical records and medical history, and a physical exam. *Id*. Following the narrative exam notes, Dr. Leinenbach completed a form supplied by the Social Security Administration, asking the doctor's opinion about plaintiff's ability to do work-related activities. Tr. 469-75. The form is primarily of the "check-box" variety, although there are several places where narrative explanations can be added.

As to plaintiff's medical history, Dr. Leinenbach noted that plaintiff suffered injuries from a car crash in September 2019, "including a comminuted right acetabular fracture-dislocation, left superior and inferior pubic rami fractures, a right sixth rib fracture, and nasal fractures." Tr. 466. Plaintiff was hospitalized for a couple of weeks, during which time he underwent right hip ORIF.[2] *Id*. Plaintiff was discharged with a wheelchair and transitioned to a walker a month before the exam, although he still used the wheelchair or a scooter for long distances. *Id*. At the time of the doctor's exam, plaintiff had only completed one physical therapy session since discharge from the hospital. *Id*.

During the physical exam, Dr. Leinenbach observed that plaintiff walked into the exam room with a walker. Tr. 467. Plaintiff's gait was stable with the walker. *Id*. Without the walker, Dr. Leinenbach reported, plaintiff walked with a "very antalgic and slow" gait, favoring his right hip. *Id*. Plaintiff was able to walk about 20 feet before needing to rest due to hip pain. *Id*. "Of note," the doctor added, "his gait appears moderately exaggerated and he demonstrates

---

[2] "Abbreviation for open reduction and internal fixation." Stedman's Medical Dictionary, 1380 ORIF, Blumberg, (28th ed. 2006).

Page 5 – OPINION AND ORDER

pain behavior while walking." *Id*. Plaintiff was able to get on and off the exam table without assistance. *Id*. Likewise, he was able to remove and replace his shoes on his own. *Id*.

On physical exam, plaintiff exhibited limited range of motion in his right hip. Tr. 468. Dr. Leinenbach observed surgical scarring at the right hip, with mild crepitus and tenderness to palpation. *Id*. Otherwise, the doctor made no other abnormal findings. *Id*. Dr. Leinenbach diagnosed "chronic right hip pain with reduced range of motion status post comminuted right acetabular fracture treated with ORIF" in September 2019. *Id*.

On the check-box form, Dr. Leinenbach opined that in an eight-hour workday, plaintiff could frequently lift/carry up to ten pounds, and occasionally up to 20 pounds. Tr. 469. The doctor explained that plaintiff's lifting and carrying limitations were "secondary to chronic right hip pain with reduced range of motion" following hip surgery, and antalgic gait. *Id*. The doctor opined that plaintiff could sit for six hours at a time without interruption, and stand and walk for one hour (each) without interruption. Tr. 470. In an eight-hour workday, plaintiff could sit for eight hours, stand for four hours, and walk for four hours. *Id*.

To the question, "[d]oes the individual require the use of a cane to ambulate," Dr. Leinenbach checked "Yes." Tr. 470. Next to that answer, he annotated "*Walker." *Id*. To the subsequent "if yes" questions, "[h]ow far can the individual ambulate without the use of a cane," the doctor opined "~20 feet." *Id*. The doctor checked that "yes," "use of a cane" was medically necessary. *Id*. The doctor also checked "yes" that "without a cane … the individual [can] use his/her free hand to carry small objects." *Id*. In the narrative explanation section, Dr. Leinenbach wrote that these limitations, like the others, were secondary to chronic hip pain, post-surgery, and antalgic gait. *Id*.

Page 6 – OPINION AND ORDER

Elsewhere on the form, the doctor opined that plaintiff could operate foot controls continuously with both feet. Tr. 471. Plaintiff could stoop continuously, and occasionally climb stairs, balance, kneel, crouch, and crawl, but never climb ladders. Tr. 472. As to environmental exposures, the doctor opined that plaintiff should never be exposed to unprotected heights due to his antalgic gait. Tr. 473. The doctor checked "yes" that plaintiff could perform activities including shopping, traveling without a companion, walking a block at a reasonable pace on rough or uneven surfaces, and climbing a few steps at a reasonable pace with the use of a handrail. Tr. 474. The doctor checked "yes" that plaintiff could ambulate without using a wheelchair, walker, or two canes or two crutches, but annotated this answer with "*short distances only." *Id*.

The final question on the form asked whether the limitations described have lasted or will last for 12 consecutive months. *Id*. Dr. Leinenbach checked "No" and wrote, "I anticipate significant improvement in hip pain and range of motion and gait stability with ongoing fracture healing and physical therapy." *Id*.

C.    **The ALJ's Opinion**

In reviewing plaintiff's treatment records, the ALJ summarized plaintiff's injuries, surgeries, and physical therapy treatment following the car crash in September 2019. Tr. 23-26. As pertains to plaintiff's use of a walker, the ALJ noted that medical records indicated plaintiff continued to use a walker in March 2020, but that by June 2020, he "had been able to wean off the walker," although he still had a limp. Tr. 26. The ALJ noted the diagnosis at the June 2020 exam was "closed fracture of right hip with routine healing; leg length discrepancy; and. trochanteric bursitis of right hip" with a contemporaneous x-ray showing "postsurgical changes with interval fracture healing." *Id*. Further, the ALJ remarked, plaintiff "had indicated that he

Page 7 – OPINION AND ORDER

had been trying to do some painting around his house." *Id*. The ALJ concluded that the medical record, including imaging, showed plaintiff's condition had improved since his car crash and supported the functional limitations described in the RFC. Tr. 27-28. Likewise, in analyzing plaintiff's subjective complaints vis-à-vis his activities of daily living, the ALJ noted plaintiff's ability to operate a motor vehicle and run errands independently, and that he was able to do some painting around his house. Tr. 28. The ALJ concluded these activities were inconsistent with the severity of his claimed limitations and that any limitations imposed by his impairments were "accounted for sufficiently in the residual functional capacity." *Id*.

Turning to the medical opinion evidence at issue, the ALJ found Dr. Leinenbach's medical opinion to be persuasive, supported by the medical evidence and the doctor's own examination. Tr. 30. The ALJ acknowledged that at the time of the consultative exam, plaintiff had transitioned from a wheelchair to a walker one month prior; plaintiff reported he used the walker for short distances, but the wheelchair or scooter for long distances. *Id*. The ALJ pointed out that during the exam, plaintiff was able to get on and off the exam table without assistance. *Id*. The ALJ further noted that Dr. Leinenbach observed plaintiff's gait was stable with the use of the walker, but very antalgic and slow without it. *Id*. The ALJ recognized that plaintiff favored his right hip, which exhibited decreased range of motion. *Id*. However, his left hip was within normal limits, and he showed no other range of motion issues in all other groups tested. *Id*. Plaintiff exhibited "5/5" motor strength in bilateral upper and lower extremities, and his muscle bulk and tone were normal. *Id*. The ALJ summarized the doctor's opinion as:

> [plaintiff] was capable of lifting or carrying twenty pounds occasionally and ten pounds frequently. The [plaintiff] was able to stand for four hours, walk four hours, and sit eight hours in an eight-hour workday; the [plaintiff] would require use of a cane/walker; the plaintiff could occasionally climb stairs and ramps, but never climb ladders or scaffolds; the [plaintiff] could frequently balance, kneel, crouch, and crawl; and the [plaintiff] should avoid unprotected heights.

*Id*.

Discussing the persuasiveness of the doctor's opinion, the ALJ concluded that from "the period of September 1, 2019 to current, despite the presence of the claimant's severe impairments, the objective evidence is consistent with a limitation to less than the full range of light work." Tr. 31. The ALJ added that plaintiff's "statements regarding his activities of daily living continue to be consistent with the limitations provided in the [RFC]." *Id*. Notably, the ALJ cited plaintiff's June 2020 medical records in support of these findings.

**D.    Analysis**

Plaintiff argues that Dr. Leinenbach's narrative exam notes combined with the annotation to the check-box form opinion clearly indicate that plaintiff required a walker, not a cane. In support of this position, plaintiff notes that the form did not ask independent questions about a walker, and that the doctor did not observe plaintiff with a cane, only a walker. Accordingly, plaintiff argues, the ALJ's use of "cane/walker" misrepresents Dr. Leinenbach's opinion, and the inclusion of a cane in the RFC, rather than the walker, is error.

As an initial matter, there is a question of whether this is an interpretation issue or a rejection issue. The distinction between an ALJ's rejection of a medical opinion and interpretation of an opinion is "procedurally significant" because of the different standards of review. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citations omitted). While the Ninth Circuit has yet to weigh in on the standard of review for rejection of uncontroverted medical opinions in cases filed after March 27, 2017, under current Ninth Circuit law, an ALJ must provide "clear and convincing" reasons to reject an uncontradicted opinion from a treating or examining doctor and "specific and legitimate" reasons to reject a contradicted opinion from

such doctor. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). On the other hand, for interpretation issues, the ALJ is responsible for resolving ambiguities and conflicts in the record, and her decision must be upheld if it is supported by substantial evidence, even if it susceptible to more that one rational interpretation. *Magallanes v. Bowen*, 881 F. 2d 747, 750 (9th Cir. 1989). As discussed below, the ALJ's decision must be upheld by either standard.

To the extent the ALJ rejected the doctor's opinion that plaintiff required a walker, the ALJ cited plaintiff's June 2020 medical records indicating he no longer needed the walker and he was able to do activities, like paint his house, that were inconsistent with required use of a walker. Tr. 26-31. Significantly, the ALJ is permitted to consider new evidence not available to the opining medical source. 20 C.F.R. § 416.920c(c)(5) ("When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.") Thus, the ALJ provided clear and convincing reasons, based on new evidence, to reject any opinion that plaintiff required a walker.

To the extent the ALJ interpreted Dr. Leinenbach's opinion to mean cane *or* walker, the interpretation is supported by substantial evidence. Dr. Leinenbach indicated that plaintiff could carry a small object in his free hand while using a cane, something that would not be possible with the use of a two-handed walker. Likewise, Dr. Leinenbach opined that plaintiff could carry up to ten pounds frequently, and up to 20 pounds occasionally – efforts that would likely be restricted by use of a walker. The doctor also opined that plaintiff could climb stairs with one hand on the handrail. The doctor noted that plaintiff could walk short distances without the walker. Finally, the doctor opined that he did not expect plaintiff's limitations to last 12 months,

and indeed expected improvement with gait and mobility. Tr. 474. Thus, viewing all of the postural limitations and abilities Dr. Leinenbach opined upon, the ALJ could reasonably have interpreted the doctor to have meant a walker or a cane interchangeably.

**E.     Any Error is Harmless**

To be found disabled under the rules, a plaintiff must have an impairment or combination of impairments that have lasted or are expected to last for a continuous period of at least 12 months.  42 USC § 1382c(a)(C)(i); 20 C.F.R. § 416.909.  Dr. Leinenbach opined that plaintiff's impairments would not last 12 months, and the record indicates that plaintiff had made improvements to the point of not needing a walker by June 2020 -- less than ten months after the September 2019 car crash.  Thus, even if the ALJ erred by failing to include use of a walker in the RFC, any error was harmless because plaintiff's impairment did not meet the duration requirement.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed, and this case is dismissed.

IT IS SO ORDERED.

DATED this 28th day of March, 2022.

    /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge